IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
NOV 23 2009
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| TANDBERG, INC., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:09cv863 |
| ) | |
| ADVANCED MEDIA DESIGN, INC., ) | |
| Defendant. ) | |

## ORDER

The matter is before the Court on plaintiff's motion to dismiss defendant's amended counterclaims pursuant to Rule 12(b)(6), Fed. R. Civ. P. The matter was fully briefed and argued by counsel at a November 19, 2009 hearing, at which time a series of Bench rulings were made with respect to each counterclaim. At the conclusion of the hearing, however, plaintiff emphasized its argument regarding the "first material breach" rule, arguing that a ruling on this issue in its favor would be dispositive. Given this, the matter was taken under advisement. Accordingly, this Order: (i) provides notice to the parties, pursuant to Rule 12(d), Fed. R. Civ. P., that plaintiff's motion to dismiss is hereby converted to a motion for summary judgment;[1] (ii) affords the parties an opportunity to identify disputes of material fact to the extent specified in

---

[1] In this circuit, where, as here, a motion to dismiss is converted to a motion for summary judgment, the parties should be afforded an opportunity to present material relevant to the summary judgment issue. *See Bosiger v. US Airways, Inc.*, 510 F.3d 442, 450-51 (4th Cir. 2007) (affirming district court's decision to convert motion to dismiss into a motion for summary judgment because "[b]oth parties had ample opportunity to present material relevant to the question of notice"). Here, plaintiff correctly argues that judicial notice may be taken of facts previously litigated or deemed not in dispute on summary judgment with respect to the breach of contract claim.

this Order; and (iii) holds the Bench rulings made as to each counterclaim in abeyance pending resolution of the first material breach issue.

Plaintiff, a Delaware corporation with its principal place of business in Virginia, manufactures videoconferencing equipment. Defendant, a California corporation, specializes in providing companies with industry-leading collaborative audio-visual and teleconferencing solutions. On July 1, 2002, the parties entered into an Authorized Channel Partnership Agreement ("Agreement"), under which defendant was named a nonexclusive reseller of plaintiff's products for the regions defined in Schedule A to be the Southwest and Western Territories. By letter dated May 8, 2009, plaintiff notified defendant that the Agreement would terminate on June 30, 2009.

Defendant's original counterclaims were dismissed by Order dated September 18, 2009. *See Tandberg, Inc. v. Advanced Media Design, Inc.*, 1:09cv863 (E.D. Va. Sept. 18, 2009) (Order). Specifically, with respect to alleged breaches of contract and implied breaches of the covenant of good faith and fair dealing, the Order dismissed with prejudice and without leave to amend counterclaims that plaintiff (i) replaced AMD with KBZ, another reseller, (ii) sent notice to defendant's customers of the June 30, 2009 termination, and (iii) informed defendant's customers and industry professionals of defendant's termination. In addition, the Order dismissed without prejudice and with leave to amend counterclaims that plaintiff (i) denied an order for demonstration equipment, (ii) excluded defendant from the America's Summit meeting, and (iii) restricted defendant's credit line. The counterclaims were dismissed because, under Virginia law, an implied covenant of good faith and fair dealing arises only out of specific contractual provisions; it does not bind the parties where no contractual duty is imposed. *See Va.*

*Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 541-42 (4th Cir. 1998); *L&E Corp. v. Days Inns of Am., Inc.*, 992 F.2d 55, 59 n.2 (4th Cir. 1993). As the Supreme Court of Virginia has held, an implied covenant "cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." *Ward's Equip., Inc. v. New Holland N. Am.*, 493 S.E.2d 516, 520 (Va. 1997). Defendant's original counterclaims failed to allege with specificity which provisions of the Agreement formed the basis of its counterclaims relating to breach of an implied covenant.

Defendant's amended counterclaims allege eight breaches of the Agreement or of the implied covenant of good faith and fair dealing related to specific provisions of the Agreement:

1. that plaintiff failed to provide defendant with training materials for training defendant's dealers between January and October 2008;

2. that defendant was precluded from selling certain products to the U.S. Army and another customer in July or August 2008 because plaintiff failed to obtain a JITC certificate;

3. that plaintiff failed to ship demonstration equipment to defendant on May 20, 2009;

4. that plaintiff reduced or froze defendant's credit line on or about June 1, 2009;

5. that plaintiff excluded defendant from the annual America's Summit meeting, held on June 14-15, 2009, where plaintiff regularly distributes sales materials and technological information about its products;

6. that plaintiff diverted sales from AMD to KBZ, another re-seller, in May and June 2009;

7. that plaintiff neglected to furnish defendant with sales leads "over the course of the contract"; and

8. that, at an unspecified time, plaintiff refused to ship a product to Pacific Star even though defendant had made a pre-payment for this order in the amount of $231,000;

*See* Am. Countercls.[2]

Furthermore, in a prior Memorandum Opinion dated November 3, 2009, and an Order dated November 19, 2009, summary judgment was granted in favor of plaintiff in the amount of $3,180,714.72 for defendant's failure to pay for videoconferencing equipment shipped pursuant to the Agreement, and $249,492.86 for late fees on this amount. *See Tandberg, Inc. v. Advanced Media Design, Inc.*, 1:09cv863 (E.D. Va. Nov. 3, 2009) (Mem. Op.); *Tandberg, Inc. v. Advanced Media Design, Inc.*, 1:09cv863 (E.D. Va. Nov. 19, 2009) (Order). The current record makes clear that at least $600,000 of this amount was due and owing by March 31, 2009. This failure to pay has already been adjudicated the first and sole material breach in this case.

The question whether the first material breach rule precludes defendant from raising its counterclaims is a question that is governed by Virginia law. *See* Compl. Ex. A Art. 9.1 ("This Agreement shall be governed by and interpreted under the laws of the Commonwealth of Virginia . . . ."). Notably, however, the cases addressing this issue are not entirely uniform. On the one hand, the Supreme Court of Virginia has previously held in *American Chlorophyll, Inc. v. Schertz*, 11 S.E.2d 625, 628 (Va. 1940), that a contractual party who elects to continue the

---

[2] Plaintiff argues that defendant impermissibly exceeded the scope of permissible amendment in contravention of the September 18, 2009 Order by adding new allegations of breach of contract. In response, defendant argues (i) that it did not replead allegations that were dismissed with prejudice and without leave to amend, and (ii) that the additional allegations not contained in the first counterclaim pleading are permitted by Rule 15(a)(1)(A), Fed. R. Civ. P., because plaintiff has not yet served a responsive pleading. Because courts consistently hold that a motion to dismiss is not a "pleading" as defined by Rule 7(a), Fed. R. Civ. P., defendant is entitled to amend its counterclaims once as a matter of course pursuant to Rule 15(a)(1), Fed. R. Civ. P, where, as here, plaintiff has not served a responsive pleading. *See, e.g., Vanguard Military Equip. Corp. v. David B. Finestone Co., Inc.*, 6 F. Supp. 2d 488, 491-92 (E.D. Va. 1997). Plaintiff's counterclaim with respect to diversion of sales to KBZ, however, essentially repleads claims that were dismissed with prejudice and without leave to amend in the September 18, 2009 Order, and therefore that counterclaim may not be repleaded.

contract in spite of the other party's material breach, which is sufficient cause to terminate the contract, may not argue that his subsequent breach of the contract is therefore excused. On the other hand, more recent decisions hold that a contractual party who first commits a *material* breach may not sue to enforce subsequent breaches by the other party. *See Countryside Orthopaedics, P.C. v. Peyton*, 541 S.E.2d 279, 286-86 (Va. 2001); *Horton v. Horton*, 487 S.E.2d 200, 203-05 (Va. 1997); *see also* 23 Williston on Contracts § 63:8 (4th ed. 2008) (citing *Horton*, 487 S.E.2d 200). A detailed examination of these three cases is essential to understanding and deriving the rule to be applied to the instant dispute.

In *American Chlorophyll*, Schertz promised to disclose to American Chlorophyll a secret process for extracting certain chemicals from vegetable leaf matter in exchange for a five-percent royalty, to be paid in quarterly installments, on the net sales of the products made using the secret process. In turn, Schertz was prohibited from disclosing the secret process to others. Between November 1935 and September 1938, Schertz fulfilled his confidentiality obligation; yet, American Chlorophyll failed to make the eleven quarterly royalty payments specified under the contract. When Schertz subsequently published the secret process in a 1938 article, the parties terminated the agreement. The Supreme Court of Virginia applied a rule of election and held that although American Chlorophyll first breached the contract by failing to pay royalties, Schertz had declined to terminate the contract and thus was liable for his subsequent breach of confidentiality. Thus, Schertz was precluded from "keep[ing] the contract alive for his own benefit, claiming the royalties thereunder, and at the same time excuse his default by averring that the contract was at an end. He may not in the same breath affirm and disaffirm." *American*

*Chlorophyll*, 11 S.E.2d at 628.[3]

By contrast, in *Countryside* the parties entered into an agreement whereby the plaintiff, Dr. Peyton, was (i) required to make monthly payments for stock in the defendant professional corporation, and (ii) was to receive severance pay upon termination of the agreement. Although plaintiff did not make timely payments for the stock, both parties continued to perform under the agreement for seven months. Indeed, plaintiff was paid a nearly $14,000 bonus during that period. Significantly, termination of the agreement could have been unilaterally effected upon ninety days notice. When Countryside refused to pay Dr. Peyton severance, he filed suit for breach of contract, which prompted Countryside to assert numerous counterclaims. Despite the parties' continued performance for seven months, the Supreme Court of Virginia found that plaintiff materially breached the contract by failing to make timely payments for the stock, and that this first material breach precluded him from enforcing the contract's severance pay provision against Countryside.

The Supreme Court of Virginia applied the same rule in *Horton*. There, a husband and wife entered into an agreement requiring Mrs. Horton to sign a power of attorney in exchange for Mr. Horton's maintaining and, if necessary, supplementing with personal funds an escrow account used to pay Mrs. Horton's expenses. Despite Mrs. Horton's refusal to sign the power of

---

[3] Defendant cites *Fielding v. Robertson*, 126 S.E. 231 (Va. 1925), and *Erlich v. Hendrick Constr. Co.*, 225 S.E.2d 665, 669 n.1 (Va. 1976) for the proposition that a party who continues to enjoy the benefits of a contract is liable for any breach of contract, even if the other party has first breached the contract. *See* Def.'s Br. in Opp'n at 20. These cited cases are inapposite and do not stand for the proposition advanced by defendant. *Fielding* concerns the continuing validity of a contract where one party alleges that it has fully repudiated a contract, and *Erlich* simply states the well-established principle that where a party performs under a contract and claims its benefits, that party is precluded from claiming that a contract never existed.

attorney, Mr. Horton supplemented the escrow account on nine occasions. When Mr. Horton refused to continue supplementing the escrow account, Mrs. Horton sued for breach of contract. In response, Mr. Horton counterclaimed for breach of contract stemming from Mrs. Horton's failure to sign the power of attorney. Mr. Horton also invoked the first material breach rule to argue that Mrs. Horton could not recover for her breach of contract claim. The Supreme Court of Virginia agreed and held that Mrs. Horton's refusal to sign the power of attorney was the first material breach and precluded her from enforcing the contract against Mr. Horton for his subsequent failure to supplement the escrow account. Importantly, the first material breach rule was applied even though the facts make clear that the parties continued to benefit from, and operate under, their agreement following Mrs. Horton's material breach.

The *American Chlorophyll* decision cannot be harmonized with *Countryside* and *Horton*. In each case, (i) the party seeking the contract's enforcement first committed a material breach, and (ii) the parties continued—indeed, elected—to perform under the contract and only subsequently terminated the agreements. Yet, the Supreme Court of Virginia has applied two different rules in resolving these disputes. Unfortunately, its later decisions in *Countryside* and *Horton* neither cite *American Chlorophyll* nor recognize the principle set forth in that decision. Nonetheless, the Supreme Court of Virginia has not applied the *American Chlorophyll* rule since that 1940 decision.[4] Instead, under factual scenarios that are not meaningfully distinguishable, it has consistently invoked the principle that "[i]f the first breaching party committed a material

---

[4] It should be noted that two unpublished decisions from the Eastern District of Virginia have applied *American Chlorophyll*, although neither cites, discusses, nor reconciles *Countryside* or *Horton*. See *Philip Morris U.S., Inc. v. Fuels LLC*, 2009 U.S. Dist. LEXIS 31765 (E.D. Va. Apr. 15, 2009); *Precision Tune Auto Care, Inc. v. Pinole Auto Care, Inc.*, 2001 U.S. Dist. LEXIS 24840 (E.D. Va. Oct. 15, 2001).

breach, . . . that party cannot enforce the contract," even where the parties clearly have elected to continue performing under the terms of the contract. *Horton*, 487 S.E.2d at 204. This rule is sensible, as it protects the non-breaching party from having to perform its obligations despite the breaching party's material default. Farnsworth rationalizes this rule in stating that

> Although a material breach justifies the injured party in exercising a right to self-help by suspending performance, it does not necessarily justify the injured party in exercising such a right by terminating the contract. Fairness ordinarily dictates that the party in breach be allowed a period of time—even if only a short one—to cure the breach if it can.

*See* II Farnsworth on Contracts § 8.18 (3d ed. 2004). The *Countryside* and *Horton* decisions appear to apply this rule expansively. Accordingly, given the fact that *American Chlorophyll* has not been applied since 1940, and the fact that *Countryside* and *Horton* appear to implicitly abrogate, if not overrule, *American Chlorophyll*, it is appropriate to apply the first material breach rule here.[5]

Under the first material breach rule, it is pellucidly clear that defendant may not enforce the contract against plaintiff even though the parties continued to perform under the contract through June 2009. In this case, it became apparent in the course of litigating plaintiff's motion for summary judgment for breach of contract that defendant indisputably failed to pay more than $600,000 for shipped videoconferencing equipment pursuant to the contract by at least March 31, 2009.[6] This contract breach was unquestionably material in that it was "so fundamental to the

---

[5] While Virginia law allows a U.S. District to certify a question to the Supreme Court of Virginia where there is no controlling authority and the question is dispositive, *see* Va. Sup. Ct. R. 5:42(a), certification would not be appropriate here, as there is not a paucity of controlling authority; rather the pertinent decisions here are simply difficult to reconcile.

[6] This fact was made clear by an email exhibit attached to defendant's brief regarding the calculation of late fees. Specifically, the email stated that invoices 299631 and 299632, together

contract that the failure to perform that obligation defeats an essential purpose of the contract." *Horton*, 487 S.E.2d at 204 (citations omitted).[7] Indeed, under Virginia law, it is well-settled that failure to make timely payment constitutes a material breach. *See, e.g., Johnson v. D & D Home Loans Corp.*, 2008 WL 851083, at *7 (E.D. Va. Jan. 23, 2008); *Elite Entm't, Inc.*, 396 F. Supp. 2d at 696; *Countryside*, 541 S.E.2d at 286; *Horton*, 487 S.E.2d at 204. Yet, as Farnsworth notes, the injured party suffering from a material breach of contract need not immediately terminate the contract, but may, out of prudence and fairness, afford the breaching party an opportunity to cure the breach. *See* II Farnsworth on Contracts § 8.18. Plaintiff did precisely this; plaintiff allowed defendant from April to early May 2009 to cure the material breach. Defendant failed to do so, and on May 8, 2009 a notice of termination issued. Accordingly, having committed the first material breach, and having failed to cure that breach given the opportunity to do so, defendant cannot enforce the Agreement against plaintiff.

Although the question whether defendant first materially breached the Agreement by failing to pay over $600,000 by March 31, 2009 has already been fully litigated and is now law of the case, out of an abundance of caution, and because the parties have not previously been given notice of the conversion of plaintiff's motion to dismiss to a motion for summary judgment, the

---

totaling over $600,000, were due on Tuesday, March 31, 2009. *See* Def.'s Resp. to Matter of Interest Ex. B at 1. In the course of the summary judgment proceedings on plaintiff's claim for breach of contract, defendant conceded that these invoices were not paid, and that only the amount of late fees owed was in dispute.

[7] *See also Elite Entm't, Inc. v. Khela Bros. Entm't, Inc.*, 396 F. Supp. 2d 680, 693 (E.D. Va. 2005) (citation omitted) (defining material breach as a failure to do something "that is so important and central to the contract that the failure defeats the very purpose of the contract"); *Countryside*, 11 S.E.2d at 628 (finding exception to first material breach rule where the breach does not go to the "root" of the contract) (citation omitted).

parties are afforded an opportunity to further present legal authority on the issue of defendant's first material breach. In that regard, it is noted that neither defendant's breach of contract counterclaims nor defendant's breach of an implied covenant counterclaims constitute material breaches, as they do not go to the root or essence of the contract. Accordingly, if *Countryside* and *Horton* rather than *American Chlorophyll* apply here, enforcement of these alleged counterclaims would be precluded by defendant's first material breach on March 31, 2009. Further, with respect to defendant's allegation regarding the approximately $231,000 pre-payment to Pacific Star, plaintiff represented in the course of the November 19, 2009 hearing that plaintiff had credited defendant for this amount, which was reflected in plaintiff's successful breach of contract claim for $3,180,714.72. Defendant's counsel did not indicate that this fact was in dispute during the November 19, 2009 hearing. Nonetheless, the parties are afforded an opportunity to raise any genuine issues of material fact as to whether this approximately $231,000 credit has been applied.

Accordingly, for the reasons stated herein, and for good cause,

Defendant is hereby provided notice pursuant to Rule 12(d), Fed. R. Civ. P., that plaintiff's motion to dismiss defendant's amended counterclaims is converted to a motion for summary judgment.

It is further **ORDERED** that the parties may file simultaneous briefs on or before 5:00 p.m., Tuesday, December 1, 2009 addressing (i) whether defendant's counterclaims must be dismissed pursuant to the first material breach rule, and (ii) whether there is a material dispute of fact as to whether plaintiff has applied the approximately $231,000 credit to its $3,180,714.72 breach of contract claim.

The Clerk is directed to send a copy of this Order to all counsel of record.

Alexandria, Virginia,
November 23, 2009

/s/
_____
T. S. Ellis, III
United States District Judge